UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| LINDA CAROL LEE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. ) | CIVIL ACTION NO.<br>5:15-CV-010-BG<br>ECF |

**REPORT AND RECOMMENDATION**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Linda Carol Lee brings this action appealing a decision of the Social Security Administration in which an Administrative Law Judge (ALJ) denied her application for disability insurance benefits (DIB). The United States District Judge transferred this case to the United States Magistrate Judge for further proceedings. Lee did not consent to the jurisdiction of the United States Magistrate Judge. In accordance with the order of transfer, the undersigned now files this Report and Recommendation.

**I.    Statement of the Case**

Lee filed her application for DIB on July 30, 2012. She originally claimed a disability onset date of November 1, 2010, but she later amended it to May 15, 2011. (Tr. 40.) She claims that she became disabled on that date, at the age of fifty-seven, due to degenerative disc scoliosis, fibromyalgia, rheumatoid arthritis, osteoarthritis, depression, anxiety, and thumb joint replacements with residual pain. (Tr. 70.) An ALJ held a hearing and issued a decision on December 20, 2013, that Lee was capable of performing her past relevant work as a substance abuse and mental health counselor despite her impairments and was not, therefore, disabled. (Tr. 32.) Thereafter, the

Appeals Council denied Lee's request for review; Lee subsequently brought this appeal. Following denial of a request for review, the ALJ's decision becomes the Commissioner's final decision and is properly before the court for review. *Sims v. Apfel*, 530 U.S. 103, 107 (2000); *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) (holding the Commissioner's final decision incorporates the Appeals Council's denial of a claimant's request for review). The court must now decide whether the Commissioner's final decision is supported by substantial evidence and was reached through the application of proper legal standards. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

## II.    Facts

Lee underwent two-level anterior cervical discectomy and fusion surgery in 1999; she had shoulder surgeries in 2000, 2002, and 2003. (Tr. 287.) The medical evidence shows that since then, she has struggled with back, neck, and leg pain, as well as a variety of other ailments. (Tr. 273–95.) She has received numerous treatments and medications to address the pain. (Tr. 275–95, 370–72.) She lives with her mother, who receives assistance from a home health aid. (Tr. 48, 170–71.) The home health aid does most of the cooking and cleaning, although Lee prepares some sandwiches and microwave meals and is able to dress and care for herself. (Tr. 47–49, 58, 170–72.) She drives on a limited basis. (Tr. 62.) Before Lee stopped working, she was employed as an adolescent counselor, substance abuse counselor, and mental health counselor for over fifteen years. (Tr. 60–62, 178–85.)

Lee raises the following points of error on appeal: (1) that the ALJ erred by not assigning controlling weight to the opinions of her treating physician; and (2) that the ALJ erred by finding that she could perform her past relevant work as a counselor. Pl.'s Br., at 12, 14 (ECF No. 20). As

discussed below, the undersigned recommends remand because of the ALJ's analysis regarding the opinions of Lee's treating physician. Accordingly, the undersigned will not address Lee's second issue—whether the ALJ erred by finding she could perform her past relevant work.

### III.   Standard of Review

The ALJ uses a five-step evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 416.920 (2015). A court, on the other hand, is limited to two determinations when reviewing a decision of the Social Security Administration: (1) whether the decision is supported by substantial evidence in the record and (2) whether the Commissioner applied the proper legal standards. *See* 42 U.S.C. § 405(g) (2015); *see, e.g.*, *Higginbotham*, 405 F.3d at 335. "Substantial evidence" means enough evidence "that a reasonable mind might accept it as adequate to support a conclusion." *Murray v. Astrue*, 419 F. App'x 539, 541 (5th Cir. 2011) (quoting *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992)). Although the court cannot re-weigh evidence, it has a duty to "scrutinize the record in its entirety to determine the reasonableness of the decision reached by the [Social Security Administration] and whether substantial evidence exists to support it," including evidence favorable to the Commissioner as well as contrary evidence. *Id.* (quoting *Randall*, 956 F.2d at 109). If the Commissioner's findings are supported by substantial evidence, they are treated as conclusive and will be affirmed. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971).

### IV.   Discussion

In the first three steps of the five-step sequential evaluation, the ALJ makes determinations regarding whether the claimant is currently working, whether she has an impairment or combination of impairments that are severe, and whether her impairments meet or medically equal one of the

listings in the regulations. 20 C.F.R. § 416.920. At the third step of the evaluation, the ALJ is required to compare the claimant's impairments with listings contained in the regulations that are considered severe enough to disable an individual. *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000). If an ALJ finds a claimant is not disabled on the basis of her medical status alone, at the fourth step an ALJ must determine whether the claimant's impairment or impairments prevent her from returning to past relevant work. 20 C.F.R. § 416.920(e).

In this case, the ALJ found at the first step of the evaluation that Lee was not working and determined at the second step that she suffered from a history of back surgeries (secondary to thoracic degenerative disc disease), bilateral carpal tunnel syndrome, history of bilateral shoulder surgeries (secondary to posterior girdle pain), hypothyroidism, and hypertension, which he determined were "severe" impairments. (Tr. 25.) He determined that Lee's fibromyalgia, osteoarthritis, polyarthritis, rheumatoid arthritis, cardiac murmur, COPD, and mild degenerative changes of the lumbar spine and pain in knees and hips were not supported by the objective evidence and therefore did not constitute severe impairments. (Tr. 31.) The ALJ found that Lee could return to her past relevant work as a counselor at step four; thus, his analysis ended and he found that she was not disabled.

The ALJ concluded that Lee has the residual functional capacity (RFC) to perform light work with certain limitations: lifting no more than ten pounds frequently or twenty pounds occasionally; standing or walking for six hours in an eight-hour workday, and sitting for six hours in an eight-hour workday; performing only occasional postural activities such as climbing stairs, kneeling, or crouching and no climbing ladders, ropes, or scaffolds; and frequent (but not constant) fingering and handling and only occasional overhead reaching. (Tr. 26.) In reaching this determination, the ALJ

did not assign any weight to the opinions of Dr. Scioli—Lee's treating physician and an orthopedic surgeon; he assigned "limited weight" to the opinions of the state agency medical consultants; he did not discuss the weight he assigned to Lee's other physicians. (Tr. 31–32.)

The ALJ explained that he did not accord any weight to Dr. Scioli's opinions because he made two conflicting statements. The ALJ cited a June 2011 record in which Dr. Scioli opined that Lee was unable to work due to her inability to drive long distances, difficulty sitting at a computer, and inability to perform tasks with her upper extremities. (Tr. 31, 287.) In July 2011, however, Dr. Scioli noted the following: "I think it is safe to let her try and go back to work August 3rd, and we will see if she can tolerate it, although with her multiple comorbidities I am not sure how long she is going to be able to persist and maintain employment." (Tr. 288.) The ALJ concluded that these two notations conflicted; thus, he granted no weight to Dr. Scioli's medical opinions. (Tr. 31.)

Generally, the opinion of a claimant's treating physician is entitled to great weight in determining disability.[1] *Meyers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994)); *see Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995) (quoting *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994)). When considering the weight to assign a treating physician's opinion, the ALJ must consider the following factors:

(1) the physician's length of treatment of the claimant,
(2) the physician's frequency of examination,
(3) the nature and extent of the treatment relationship,
(4) the support of the physician's opinion afforded by the medical evidence of record,

---

[1] As the Commissioner correctly pointed out in her brief, a treating physician's determination that a claimant is unable to work is never accorded controlling weight. Indeed, such a determination is a legal issue reserved for the Commissioner. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). However, an ALJ may only accord little or no weight to a treating physician's opinion on the nature and severity of a claimant's impairment upon a showing of good cause. *See Newton v. Apfel*, 209 F.3d 448, 455–56 (5th Cir. 2000). In this case, the ALJ summarily rejected Dr. Scioli's opinions in their entirety because he believed that they conflicted, not because they expressed opinion as to the legal issue of ability to work. Two inconsistent notations—even assuming they conflict—do not constitute good cause, standing alone, to reject the opinions of a treating physician.

5

    (5) the consistency of the opinion with the record as a whole, and
    (6) the specialization of the treating physician.
*Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000) (citing 20 C.F.R. § 404.1527(d)(2)). The Fifth Circuit has concluded that "absent reliable medical evidence from a treating or examining physician controverting the claimant's specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 416.1527(d)(2)." *Id.* at 453 (emphasis in original).

    Here, the ALJ did not assign any weight to the opinions of Dr. Scioli despite the lack of controverting evidence and despite his failure to perform an analysis under § 416.1527(d)(2). Dr. Scioli, an orthopedic doctor, has treated Lee since 2009; the medical records indicate that he examined her several times per year. (Tr. 273–93, 350–55, 370–72.) Dr. Scioli made numerous references to Lee's complaints of pain, joint stiffness and difficulty moving, and attempts to relieve pain through injections and pain medication. (Tr. 273–94, 350, 353.) In November 2012, he noted that she suffered from "severe degenerative collapse of multiple disc spaces all the way from T4 basically to T10" and that her pain was associated with this condition. (Tr. 353.) In an opinion submitted after the ALJ issued his decision, Dr. Scioli further clarified Lee's medical records pertaining to the time period that was before the ALJ. (Tr. 13–16.) He noted that Lee suffers from "significant and multiple level disc degeneration throughout the cervical and thoracic spine, all the way down to the thoracolumbar junction." (Tr. 13.) As a result, Dr. Scioli opined that "she cannot drive to the locations where she could actually perform [previous work duties], as the driving and getting in and out of a vehicle and carrying records, etc., are what she is unable to do." (Tr. 13.) He also opined that "sitting for any length of time becomes uncomfortable [for Lee] and the chronic sense of ache and pain in the neck and shoulders makes it distracting for her to do certain things .

6

. . ." (Tr. 13.)

The medical records from Lee's examining physicians and the state agency medical consultants do not controvert Dr. Scioli's opinions. For example, the records from Dr. Naga Bushan, a rheumatologist who treated Lee for rheumatoid arthritis and fibromyalgia, noted Lee's back tenderness, limited range of motion at times, and her general pain. (Tr. 297–98, 301–02, 305–07, 357.) And the state agency medical consultants concluded that Lee's limitations caused by her symptoms were partially supported by the medical evidence; they both recommended that she could stand no more than four hours in an eight hour workday and sit no more than six hours in an eight hour workday.[2] (Tr. 70–90.) Based on the above medical record evidence, the ALJ improperly rejected the opinions of Dr. Scioli without first analyzing them under § 404.1527. *See* SSR 96-2p, 61 Fed. Reg. at 34491 (explaining that even if an ALJ finds that a treating physician's opinion is not entitled to controlling weight, it is entitled to deference and should be analyzed under 20 C.F.R. § 404.1527); *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001) (holding that ALJ's failure to analyze treating physicians' opinions under § 404.1527 and failure to show good cause for not giving them considerable weight constituted reversible error).

Even where an ALJ errs, however, remand is only required if a claimant shows that she was prejudiced by the ALJ's error. *See Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981). In this case, the ALJ's failure to consider the factors listed in § 404.1527(c) is not harmless and prejudiced

---

[2] The ALJ rejected these limitations because he found "no objective evidence to support" them. (Tr. 32.) However, the medical evidence, Dr. Scioli's opinions, and Lee's testimony do support for these limitations. For example, Lee testified that as an adolescent counselor—her last job before she stopped working—required her to drive up to 300 miles per day. (Tr. 60–61.) She also testified however, that due to her current back conditions, she cannot sit still for very long and must consistently stand up, stretch, and move about. (Tr. 44.) Notably, Dr. Scioli opined that Lee was unable to drive long distances due to her back pain. (Tr. 13, 287.) And the medical records show that Lee suffers from severe degenerative disc disease. (Tr. 353.)

7

Lee. The ALJ failed to give any weight—or even any deference—to Dr. Scioli's opinions without first analyzing them under § 404.1527(c). Nor did he give Lee's examining physicians' opinions any weight, and he only gave the state agency medical consultant's opinions—which at least partially corroborated Dr. Scioli's opinions—limited weight. Moreover, when posing hypotheticals to the VE, the ALJ did not use either Dr. Scioli's opinions or the state agency consultants' opinions, nor did he use Lee's testimony, as a basis for his conclusion that Lee could sit or stand for six hours in an eight-hour workday on a regular sustained basis. For example, Lee testified

In sum, the ALJ failed to analyze Dr. Scioli's opinions under the factors in § 404.1527 and failed to show good cause for not assigning them any weight. Lee has established that she was prejudiced from the ALJ's failure to properly weigh Dr. Scioli's opinion. Thus, the case should be remanded for further consideration.

## V.     Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Court reverse and remand the Commissioner's decision for further administrative proceedings consistent with these proposed findings of fact and conclusions of law.

## VI.    Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2015); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination

is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: October 23, 2015.

_____
NANCY M. KOENIG
United States Magistrate Judge